Baldwin, J.
delivered the opinion of the court.
The court is of opinion that the deed of marriage settlement in the proceedings mentioned, under which the appellees claim title to the slaves in controversy, was not duly admitted to record, under the provisions of the act of the general assembly, which must govern this case, passed in the year 1748, (5 Hen. Stat. at large, § 1, 4, p. 408, 409, 410;) the same having been admitted to record upon proof thereof in court by two witnesses only j whereas the said statute required proof by three witnesses at the least. By the express declaration of the 4th section of said act, all such deeds are rendered void as to all creditors and subsequent purchasers, (meaning subsequent purchasers without notice,) unless acknowledged or proved, and recorded according to the directions of that act. The statute clearly embraces all deeds of marriage settlement, whether executed after or in contemplation of the marriage ; and whether the property thereby settled, be the property of the wife, or of the husband. Its policy was to protect creditors and purchasers who might otherwise be injured by secret deeds of marriage settlement; and its comprehensive terms, “all creditors and subsequent purchasers,” as well as its spirit, embrace all persons who would have valid claims, in either character, to or against the property, if such deed had never been made. *356 In cases like the present, where the deed of marriage settlement was executed in contemplation of the marriage, and conveyed slaves or other personal property belonging to the wife, the effect of the deed, if valid, would have been to intercept the marital rights of the husband; and settle the property according to the uses declared by the deed. But the deed in question, though good between the parties, is under the provisions of the statute, a mere nullity so far as the creditors of the husband, or subsequent purchasers from him without notice, are concerned; and, so far, therefore, as concerns them, could not have the effect of intercepting the marital rights of the husband. The consequence is, in the present case, that the husband, Richard Gaines, acquired by his intermarriage with Frances Taylor, the possession of the slaves embraced in the said deed of marriage settlement; and the absolute title thereto ; so far as to enable him to confer the same upon a subsequent purchaser from him for a valuable consideration, and without notice of said deed. And it appears to the court, that John Martin now deceased, originally a defendant in this cause, did subsequently to said intermarriage, purchase from the said Gaines, for a valuable consideration by him the said Martin paid to said Gaines, some of the stock of slaves embraced in the said deed of marriage settlement, without notice, at the time of said purchase and payment of said consideration, of the deed aforesaid. The court is, therefore, of opinion that the appellees, claiming as they do under the said deed of marriage settlement, have shewn no title, as against the said Martin and those claiming under him, to the slaves in controversy; and that the said decree of the said circuit court, affirming the said decree of the said county court, is erroneous. Wherefore it is decreed and ordered that the said decree of said circuit court be reversed and annulled with costs to the appellant: and this court proceeding to render such decree as the said circuit *357 court ought to have rendered, it is further decreed and ordered that the said decree of said county court be reversed and annulled, with costs to appellant; and that the bill of the appellees be dismissed with costs.
Allen, J.
The interesting question involved in this case, arose, and was decided in Pierce v. Turner, 5 Crauch 162, by a majority of the supreme court. It was also discussed by some of the judges of this court, in Land v. Jeffries, 5 Rand. 211. It was unnecessary, however, to decide it, the case being determined on another ground; and therefore judge Cabell, in his opinion printed in the appendix of the 5th volume of Randolph, did not consider the question. Judges Carr and Coalter concurred with the supreme court in their construction of the act of 1748. Judge Brooke, deciding the cause on other grounds, expressed a general approval of Pierce v. Turner. Judge Green, in one of the ablest opinions over delivered by that learned judge, controverted the correctness of that decision; and judge Cabell, as he announced from the bench during the argument of this case, then concurred with judge Green. We have then the decision of this court in Anderson v. Anderson, 2 Call 198, determining the question in one way, and the obiter opinions of some of the judges in Land v. Jeffries, giving to the statute a different construction. If the question had arisen in Land v. Jeffries, and a majority of the court had decided it in conformity with the decision in Pierce v. Turner, I should have felt myself bound by it. But mere opinions of judges upon questions not arising or adjudicated in the case before them, to whatever respect they may be justly entitled, are not considered as binding authority in any case. Much less could they be so considered when, as upon this question, they conflict with a previous decision of this court. The question must be determined upon our own construction of the law. After the able *358 opinion of judge Green in Land v. Jeffries, where the argument is exhausted, every thing I could say would he a mere repetition of his reasoning. I shall, there-f°re> content myself with referring to that opinion, and expressing my concurrence in the opinion of the court in this case as prepared by judge Baldxoin.
Brooke, J.
I entirely concur in the opinion delivered by judge Baldxoin for the court; and should not make a remark in the case, but to explain what I said of the case of Pierce v. Turner, 5 Cranch 162, in my opinion in the case of Land v. Jeffries, 5 Rand. 211. I was so satisfied that the case of Pierce v. Turner had no application to that case, that I did not think it necessary to examine it; and it being a case of the highest authority, I said I approved it. Nor do I think now, that the case of Pierce v. Turner could throw any light on the case of Land v. Jeffries. In that case, the supreme court took a different view from that taken in the opinion delivered by judge Baldxoin; and employed itself in fixing the meaning of the words in the act of assembly, “and all creditors and purchasers”—and decided that they applied to the creditors of the grantor; and not to the creditors of the grantee.
It seems to have escaped the court, that the deed of marriage settlement not being recorded according to the provisions of the act of assembly, it was a nullity as regarded all persons except the husband and wife. That as to the creditors of the husband, not having actual notice, it was as if it had never been made; and did not intercept his marital rights to the personal property of the wife.
This court took another view of the case just decided; and came to a different conclusion from that of the supreme court. In this case, the deed not being recorded, as regarded the purchaser, without actual notice, of the slaves, there was neither grantor nor grantee; there was *359 the husband in possession of the slaves of the wife, which he was entitled to by law.
Cabell, P.
sat in this cause at the commencement of the argument, but became unwell whilst it was in progress, and therefore did not unite in making the decision ; but he was present when the opinion of the court was delivered, and stated that he had concurred in opinion on the point with judge Green in the case of Land v. Jeffries; and that he approved the opinion of the court delivered in this case.